76 282
77 460
76 282
108 312
76 282
111 4
76 282
s42NW1071
f133 4237
76 282
136 2508
76 282
137 3323

## ALVIA D. ALEXANDER v. THE CITY OF BIG RAPIDS.

[See 70 Mich. ——.]

*Municipal corporations—Negligence—Defective cross-walk.*

1. The city of Big Rapids tore up a *sidewalk* at the intersection of Pine street and Rose avenue, where it connected with a *cross-walk* leading from Pine street across Rose avenue, excavating under said cross-walk and sidewalk, and leaving a portion of the ground formerly occupied by the sidewalk in and a part of Rose avenue. Plaintiff stepped onto the place where the sidewalk formerly was, and fell into the excavation, and was injured, and alleged in his declaration the negligence of the city in leaving the cross-walk in bad repair and unguarded, and in allowing said excavation to remain open and unguarded, and that plaintiff, who was passing upon and along said cross-walk, as he had a right to do, and using due and reasonable care, fell into said excavation under said cross-walk, and was greatly injured.

   *Held,* a sufficient allegation that the injury was the joint product of the tearing up of the cross-walk and of the excavation in the street under it.

2. This case is distinguishable from *Williams v. City of Grand Rapids,* 59 Mich. 51, in that in that case the city had never built or maintained a cross-walk at the point where the injury occurred, while in this the city had done so, and invited people to use it, and therefore could not remove it, and leave an excavation in its place unguarded and without warning.

3. While the city was improving Rose avenue, or after the improvement was completed, it had no right to leave Pine street open to travel, unless the crossing of the two streets was made reasonably safe and fit for travel.

4. If plaintiff stepped on the sidewalk, and fell into the excavation under the place where the cross-walk formerly was, and received his injuries by such fall, the fact that the starting of the fall was on the sidewalk would not preclude his recovery.

5. The city was liable if, after removing the cross-walk, it failed to make the descent from Pine street into the excavation safe, or protect it, if dangerous, by lights or barriers.

Error to Mecosta. (Palmer, J.) Argued October 24, 1888. Decided July 11, 1889.

Negligence case. Plaintiff brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Andrew Hanson*, for appellant.

*Frank Dumon*, for defendant.

MORSE, J. In this case the court submitted to the jury the question whether the injury was received on the sidewalk or the cross-walk. The jury found that the place where the accident occurred was where the sidewalk was torn up. But the court instructed the jury that the six feet of walk filling the corner of Pine street and Rose avenue was, according to the custom and practice of the city, sidewalk, and not cross-walk, as it was required to be built by the lot-owner and not by the city. This would have undoubtedly been correct, had it not been for the action of the city in tearing up and removing this walk, and excavating under it, in the improvement of Rose avenue, making a portion of it, at least, a part of Rose avenue, as excavated and cut down. This was permitted so to remain for a long time, and the indications from the record are that it was intended to be left so permanently.

The jury must have found that, because the plaintiff slipped within this six feet, which had been sidewalk, which slipping caused his fall, thereby his injury was received from a defect in a sidewalk and not in a cross-walk, and therefore the plaintiff could not recover. But the allegation of the declaration, also, is that plaintiff fell into the excavation; that the defendant— .

" Wrongfully, unjustly, and negligently allowed said cross-walk to continue in said dangerous, unsafe, and unfit condition, and negligently permitted the said cross-walk to remain so defective and badly out of repair, and negligently left said cross-walk in such an unguarded condition, and without proper and appropriate protection or signals, that by

means of the premises, and for want of proper and sufficient
care in keeping said cross-walk in safe condition, and in
allowing said excavation aforesaid to remain open and
unguarded, the said plaintiff, who was passing upon and along
said cross-walk, as he had a right to do, and using due and
reasonable care, fell into said excavation so in and under
said cross-walk aforesaid, and thereby the plaintiff was greatly
injured and hurt.''

And the testimony is undisputed that Alexander was found
unconscious in the excavation.

It seems to me that the declaration sufficiently alleges that
the injury was the joint product of the tearing up of the
cross-walk and the excavation in the street under it; and the
evidence is undisputed that, before this grading and excava-
ting of Rose avenue, there was, and had been for some time,
a cross-walk extending across Rose avenue at this point.

I cannot agree with Mr. Justice CHAMPLIN, that this case,
in respect to this cross-walk, is governed by *Williams v. City
of Grand Rapids,* 59 Mich. 51 (26 N. W. Rep. 279). In that
case the city of Grand Rapids had never built or maintained
a cross-walk at the point where the injury occurred.

Here the city had built and maintained a cross-walk, and
thereby invited people to use it. Having done this, the city
could not tear it up and make an excavation four feet deep,
and leave the same unguarded by barriers or lights in the
night-time, and then escape responsibility because there was
no longer any cross-walk there. If so, then the city might
remove part of the cross-walk, and be acquitted of liabilty
because there was no cross-walk at the particular spot where
the accident happened.

Nor can the city escape responsibility because the cross-
walk was removed in the improvement of Rose avenue, on the
principle enunciated in *Detroit v. Beckman,* 34 Mich. 125,
and other cases cited by my Brother CHAMPLIN.

While the city of Big Rapids was improving Rose avenue,
or even after the improvement had been completed, it had no

right to leave Pine street, which crossed Rose avenue, open to travel, unless the crossing of those two streets was made reasonably safe and fit for travel. It was the duty of the city either to make the descent from Pine street into the excavation on Rose avenue safe, or, if it must necessarily be left dangerous to travelers in the night-time, without warning, to provide, by barriers, lights, or otherwise, some precaution against accidents like the one here, which the record shows was liable to happen at any time, in the condition in which this excavation was left. See *Southwell v. Detroit,* 74 Mich. ——(42 N. W. Rep. 118).

This is not an action based on a defective cross-walk where none existed, but the allegation is that a cross-walk, which before that had existed, had been negligently torn up, and an excavation made under it in the highway; and that this state of things was negligently permitted to exist, and did exist, at the time of the injury, and was the cause of it.

The circuit judge, in my opinion, erred in confining the jury too closely to the place where the plaintiff slipped in his fall. If it were a fact that he slipped upon a portion of the walk which was a sidewalk, yet if he thereby fell into this excavation, which was in Rose avenue, and under the place where the cross-walk was before it was torn up, and the injury received was occasioned by the fall into this excavation, the fact of the starting of his fall happening on the sidewalk would not preclude his recovery.

I further think that when the city removed and tore up this sidewalk, and made an excavation in the place where it had been, by this excavation making it a part of Rose avenue, and permitted it so to remain, they, in effect and in law, caused it to be a part of the street, and that if the slipping and falling of plaintiff were caused by it he could recover, if without fault himself, under the declaration filed in this cause. When this case was here before (see 70 Mich.——, 38 N. W. Rep. 227), we held that the city would be liable for

injuries received by falling into this excavation left by the city after taking up the cross-walk and grading the street, although there was no cross-walk there at the time of the injury.

We see no difficulty in the way of recovery by the plaintiff, as the proofs stand in the record before us, if the jury should find that the plaintiff was injured without fault of his own. The negligence of the city is apparent.

The judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., and LONG, J., concurred with MORSE, J.

CHAMPLIN, J., (*dissenting*). On the first of January, 1887, between the hours of 7 and 8 in the evening, as the plaintiff was traveling eastwardly along Pine street, in the city of Big Rapids, he fell at the intersection of Pine street with Rose avenue, and suffered severe injuries.

He alleges in his declaration that he received his injuries by falling upon the cross-walk across Rose avenue, while exercising due care on his part, and that the defendant had torn up a cross-walk which was previously there, and had excavated the earth to the depth of, to wit, five feet, and had left the sides of the excavation very abrupt and precipitous, so that the cross-walk at that point was in a dangerous, unsafe, and unfit condition for persons to pass and repass over it, and that it had been in that unfit condition for a long time before he received the injury complained of; and defendant had neglected to place any protection or guard about the excavation, or any light or signals to notify the public of the unsafe and unfit condition of the cross-walk for public travel.

It appears from the record that Rose avenue, where it crosses Pine street, lies along a side hill, and that the city of Big Rapids graded and improved the avenue in the summer and fall of 1886; that previous to such improvement there

had been a cross-walk on the north line of Pine street across Rose avenue, and also that there was a plank sidewalk along the north side of Pine street; that this sidewalk extended into Rose avenue on the west side from six to eight feet, and the cross-walk connected therewith and extended across Rose avenue; that in making the improvement of Rose avenue this cross-walk and the sidewalk had been taken up, and also a portion of the walk in front of the lot adjoining Pine street, a distance back from Rose avenue about eight feet. In making the improvement the city excavated the earth along the west side of Rose avenue, and where it crosses Pine street, to the west line of the avenue, to the depth of from 28 inches to 5 feet, according to the testimony of different witnesses. This excavation, when completed, was nearly perpendicular. The street commissioner of the city, who had charge of grading Rose avenue, after the grading was completed caused the approach on the west side, at the intersection of Pine street, to be sloped down so as to permit teams and pedestrians to pass along Pine street. This was done with a scraper, and the slope or inclination commenced back from the west line of Rose avenue, upon the sidewalk, which had been removed a distance of from three to six feet, and the dirt filled in upon Rose avenue about one-half the width of the lawn, or four feet from the west line of the avenue. The depth of fill at the west line of Rose avenue was about 18 inches, making the slope about a foot and a half in four feet. Later in the fall some one, but who it does not appear, cut some steps in this slope, and placed plank therein, and such seems to have been the condition of the place at the time of the accident.

The city surveyor took some levels just previous to the trial, not from any knowledge which he had of the situation of the place of the accident at the time it occurred, but from points shown him by the street commissioner and two other persons, who claimed to be cognizant of the situation, and

who were sworn and testified as witnesses.   They showed the surveyor a point eight feet west from the west line of Rose avenue, where they claimed the level of the sidewalk was at the time of the accident, and the surveyor testified that this point was four feet and nine inches higher than the center of Rose avenue as graded; that the west sidewalk of Rose avenue is eighteen inches higher than the center of the avenue as graded; and that the difference in level between the said point in the sidewalk and a point eight feet east of the west line of Rose avenue was two feet and two-tenths.   In this it is evident that the surveyor is mistaken; for, if the difference in level between the point in the sidewalk eight feet west of the west line of Rose avenue and the center of the avenue is four feet nine inches, the difference of levels between the same point in the sidewalk and a plane eighteen inches higher must be three feet and three inches.   But, according to defendant's testimony, the slope only extended into Rose avenue four feet, thus making the fall three feet and three inches in a horizontal distance of seven to ten feet.

But there is no testimony showing that the grading of this slope commenced at a point eight feet west of the west line of Rose avenue.   The street commissioner under whose direction it was done, testified that he should say that it was from three to six feet from the west line of Rose avenue.   If the distance was three feet, the grade would be quite steep, and would account for steps being cut in the plank placed there to facilitate travel.

A snow had fallen in the latter part of December, 1886, and the street commissioner had run his snow-plow over the side and cross walks on Pine street.   Boys had used the sidewalk for coasting, and it had become slippery and dangerous. It was after dark when the plaintiff attempted to pass over this steep and slippery place.   As before stated, the testimony of the plaintiff's witnesses tended to show that there was an excavation at the place of the accident, and that it was both

deep and precipitous.   Plaintiff testified that he was walking along naturally, and stepped into the excavation, and fell and lost consciousness.   When found, the testimony shows that he was unconscious, and that he lay wholly in Rose avenue, with his feet to the east and his head nearly to the west line of Rose avenue.   There was no light, nor other precaution to prevent accident to persons passing along Pine street.

The first and principal question to be determined is whether, under the circumstances detailed, the city is liable for an injury happening to a person traveling along Pine street at the place testified to.

The plaintiff alleges that the injury occurred by reason of the cross-walk across Rose avenue being out of repair and unfit for travel, and the defendant insists that the accident happened upon a sidewalk, or, at any rate, not upon a cross-walk across Rose avenue; and to carry out this contention the defendant introduced testimony tending to show that it had been the custom, in the resident portions of the city, for the owners of corner lots to construct the walks at the corners of their lots to the gutters of the street, or to fill in the square space at the corners of the same width as the sidewalk; that there had been but few exceptions, and these were caused by the street commissioner doing the work, and not waiting for the proprietor to do it.   No ordinance was shown requiring this to be done, and no ordinance to that effect was claimed to exist.   No testimony was introduced to show whether this was resident property at the intersection of Pine street and Rose avenue, or whether it was business property; but from the manner in which the question appears to have been treated at the trial we presume it was resident property. The record shows that there never had been any sidewalk constructed on the west side of Rose avenue previous to the improvement of the avenue in 1886.   It was admitted that both Pine street and Rose avenue were public streets, and had been used as such for ten years or more.

Upon this question the circuit judge charged the jury as follows:

"The place described in the declaration in this case, where it is averred the injury was sustained, is designated by the pleader a public cross-walk over that part of Rose avenue in this city which is crossed by Pine street, along the northerly side thereof. By the express wording of the statute a distinction is made between streets, sidewalks, and cross-walks in the city, but what is to be deemed sidewalk and what cross-walk the statute does not determine.

"In the case of O'Neil against Detroit the rule of construction by the trial court in that case was based upon the practice of the city authorities in levying sidewalk rates, and it was there held a cross-walk would extend the whole distance between the extended boundary lines of the intersecting streets, while the sidewalk stopped at such boundary lines, meeting the cross-walks there, and this construction was adopted or approved by the Supreme Court of this State.

"Now, applying that rule of construction to the uncontroverted facts of this case, where the practice of the city authorities of the city of Big Rapids in constructing and repairing walks and levying rates in this city is the reverse of that in Detroit, it would seem that, for the purposes of this action, this cross-walk in question would include that part of Rose avenue only over which it extended, lying between the sidewalk on either side of said avenue. In other words, the cross-walk includes no portion of the sidewalk, but begins where the sidewalk ends, which in this case, running east, would begin at a point six feet east from the west line, and terminate at a point six feet west from the east line, of said Rose avenue, immediately north of the north line of Pine street.

"A public cross-walk is that part of a street over which a walk extends which is appropriated to and prepared for the use of foot passengers, exclusive of that portion of said street along the side of which a walk extends which is appropriated to and prepared for the use of foot passengers."

In solving the question of municipal liability for injuries occurring at the point of junction of two walks at intersecting streets, the act of incorporation must determine the duty, in the first instance, to construct or to keep in repair the walk

at such place, and, if the practice of the city authorities and the lot-owners has been in accord with the statute, the case would seem to be reasonably clear from doubt.

The city of Big Rapids was incorporated by special act in 1869, and in 1875 the charter was wholly revised, and the act of 1869 repealed. Local Laws of 1875, Act No. 272. By section 64 of this revision the common council are given full power to require the owners or occupants of lands, at their own expense, to repair, construct, make, pave, plank, or gravel and curb and rail all sidewalks adjoining said land within such reasonable time as they may direct, and, if it is not done within such reasonable time after notice to do so, then the common council may cause the same to be constructed forthwith, and collect the expense thereof by assessment, which shall be a lien upon the lot until paid. Under this statute the word "adjoining" includes the space at the intersection of corner lots so as to make it incumbent on the lot-owner to extend the sidewalk of the prescribed width over such space. The ordinary significance of the word as given by lexicographers is "joining to, adjacent, contiguous, near." In the ordinary acceptation, the space formed by the intersecting lines of streets must join or touch at the point of intersection.

In *Holmes v. Carley*, 31 N. Y. 289, the court of appeals held that where the corners of two townships touched each other, at such point they were "next adjoining," within the intent and meaning of the statute which gave to a justice of the peace jurisdiction to try actions in another town of the same county next adjoining the residence of the plaintiff or defendant.

The statute recognizes a distinction between sidewalks and cross-walks. The latter are appropriated to, and intended for, the exclusive use of persons or travelers on foot, while cross-walks are walks which are constructed across that portion of the street ordinarily designed and set apart for the

passage of teams and vehicles, and are constructed for the use and accommodation of pedestrians in crossing from one side of a street to the other. The testimony in this case showed that the place where the injury befell the plaintiff was upon a sidewalk, and not upon the cross-walk, and the instruction of the court was proper in this respect.

We have held that the act of 1879, imposing a duty and a liability upon cities with reference to defective streets, does not apply to sidewalks. *Detroit v. Putnam*, 45 Mich. 263 (7 N. W. Rep. 815). The act of 1885 failed through a defect of title. *Church v. Detroit*, 64 Mich. 571 (31 N. W. Rep. 447); *Losch v. St. Charles*, 65 Id. 555 (32 N. W. Rep. 816).

The testimony does not show that the city of Big Rapids, in making the improvement upon Rose avenue, constructed a cross-walk on the line of the sidewalk on the north side of Pine street, and no cross-walk is shown to have been constructed across Rose avenue at the point in question. If it should be conceded that the injury did not befall the plaintiff upon a sidewalk, the principles enunciated in *Williams v. Grand Rapids*, 59 Mich. 51 (26 N. W. Rep. 279), would prevent a recovery; for no cross-walk had been ordered or attempted to be constructed by the corporation, and until one is constructed there is no duty resting upon the city to keep it in repair.

Upon any view, no recovery based upon statutory liability can be had in this case. The declaration might be considered broad enough to cover an act of misfeasance in wrongfully removing the sidewalk and making a dangerous excavation in the street. But the case was not tried upon that theory; and the testimony, moreover, shows that the side and cross walks were removed by the city in the improvement of Rose avenue according to a plan adopted by the city, and the law has been well settled in this State that in planning and carrying forward and completing a public work a municipal corporation must determine for itself to what extent it will

guard against possible accidents. *Detroit v. Beckman*, 34 Mich. 125; *Lansing v. Toolan*, 37 Id. 152; *Toolan v. Lansing*, 38 Id. 315; *McCutcheon v. Homer*, 43 Id. 483 (5 N. W. Rep. 668); *McKellar v. Detroit*, 57 Id. 158 (23 N. W. Rep. 621); *Davis v. Jackson*, 61 Id. 530, 535, 539 (28 N. W. Rep. 526).

The plaintiff introduced in evidence the following ordinance:

"It shall be the duty of any person or officers of said city who shall dig or tear up any pavement, sidewalk, cross-walk, or dig any hole, ditch, drain, or sewer, in said streets, alleys, or any public places, to well and sufficiently guard the same, and as speedily as practicable to repair and put the same in as good a condition and order as before, and any person or persons excavating for cellars or any other purpose upon the borders of any street or public place, or any person or officers of said city who shall dig or tear up any pavement, side or cross walk, or any hole, ditch, or drain, in any street or public place in said city, shall erect and maintain a good and sufficient fence, railing, or bar around such excavation, hole, ditch, or drain at all times, and in such manner as to prevent accident or injury to persons or property, and shall also place and set upon such railing, fence, or bar suitable and sufficient light from sunset to sunrise of each night during the time such excavation, hole, ditch, drain, or sewer remains uncovered or unfilled; and in all cases where any work is done, or public improvement made, by private persons, the city may require the private parties doing such work to enter into a bond with said city, conditioned that they will comply with the provisions of this ordinance, and it shall be the duty of the city attorney and other legal advisers of said city to insert in all bonds required and so given a covenant in substance requiring the person so giving such bond to carefully and securely guard such work during its progress, and to keep and save the city of Big Rapids harmless and indemnified against all loss or damage by reason of any negligence or carelessness in doing such work, or by reason of not guarding, or insufficiently guarding, the same in such manner as to prevent any injury or damage being done to any person or property."

And he insists that the municipal corporation of Big Rap-

ids has by this ordinance determined for itself to what extent it will guard against mere possible accidents, and that the court should have instructed the jury that if the defendant made any excavation or dangerous or unsafe place it should have placed around it some protection or warning of some kind.

The ordinance is not susceptible of this construction. It does not purport to prescribe any duty incumbent on the defendant in erecting guards or warnings when it exercises the power conferred of grading streets. It enjoins such duty upon officers of the city, and upon independent contractors. The ordinances of the city are enacted by the common council, and are valid and binding only to the extent, and upon the subjects, that the charter authorizes the common council to legislate. If we should give to this ordinance the construction claimed by the plaintiff, it would create a duty and a liability upon the municipality not existing at the common law, and not prescribed by its charter or the general laws of this State. The power of the common council to create and impose this extraordinary liability upon the city must, if the ordinance be valid, be conferred upon the common council by the charter. Our attention has not been called by counsel to any provision of the charter of the city of Big Rapids which confers such authority; and, from a careful examination of its provisions, we are unable to find any such authority conferred upon the common council.

But we are satisfied that the council did not by this ordinance intend to lay down any rule restricting or limiting its duty in the exercise of its legislative functions in determining the plans and execution of works of public improvement in the city.

The sixteenth subdivision of section 8 of the charter provides that the city of Big Rapids—

"Shall never be liable for any damages sustained by any person in consequence of defective streets, cross-walks, or

sidewalks in said city, or in consequence of the neglect of any person to keep any such sidewalk clear from snow, ice, or other obstructions."

The same provision has passed into the revision of 1887 of the charter of that city. We shall not pass upon the validity of this legislation, as no point upon it was made in the argument in the case upon either side, and what we have said disposes of the case; and for the same reason it is not necessary to touch upon the other errors assigned.

The judgment should be affirmed.

I am authorized by Mr. Justice CAMPBELL to say that he concurs with me in the foregoing opinion.