NEAL MALLOY, ADMINISTRATOR, ETC., v. THE TOWNSHIP
OF WALKER.

*Highways—Embankment—Negligence—Failure to erect barriers—
Liability of township.*

1. Where a roadway is built at such a height between hills, and so narrow, as to require barriers or railings to make it reasonably safe and fit for public travel, it becomes the duty of the proper township to erect them, and failing so to do it must be held liable for injuries resulting from a neglect of such duty. *Carver v. Plank Road Co.,* 61 Mich. 584, 585.

2. It is a question for the jury to determine whether, under the circumstances of a given case, a highway is reasonably safe and fit for public travel, and whether a particular vehicle was unsuitable, and not road-worthy, as being unwieldy and unmanageable.

3. Where by reason of the failure of a township to keep a highway in repair travelers upon it are placed in a perilous position, no negligence can be imputed to a party in charge, if, acting upon the occasion, as it appeared to him to be, for the safety of himself and those in his charge, he did not take the precaution which upon consideration a more prudent man might have taken.

4. The statute itself imposes upon a township the duty of keeping its highways in repair, and it cannot be heard to say that because some other municipality has failed in a corresponding duty it can be excused from liability arising from its own neglect.

5. The statute requiring townships to keep their highways in repair cannot be so construed as to relieve from liability by saying that the township had adopted a method of construction, and had built according to the plan.

6. A municipality cannot construct a dangerous and unsafe road, —one not safe and convenient for public travel,—and shield itself behind its legislative power to adopt a plan and method of building and constructing in accordance therewith.

Error to Kent. (Grove, J.) Argued June 27, 1889. Decided November 8, 1889.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

J. C. Fitz Gerald (Francis A. Stace, of counsel), for appellant, contended:

1. A municipal corporation cannot be held liable in damages on account of the plan or scheme of the construction of a road, either as to height of embankment, precipitous sides, width of road-bed, or want of railing or barrier; citing Detroit v. Beckman, 34 Mich. 125; Lansing v. Toolan, 37 Id. 152; Toolan v. Lansing, 38 Id. 315; Dermont v. Detroit, 4 Id. 435; Davis v. Jackson, 61 Id. 530; Woodbury v. Owosso, 64 Id. 239.

2. Municipal corporations and their officers are entitled to use their own judgment as to the manner of constructing highways; citing Shippy v. Au Sable, 65 Mich. 494; Williams v Grand Rapids, 59 Id. 51; Irving v. Ford, 65 Id. 241; Marquette v. Cleary, 37 Id. 296.

3. In this State the statutory liability has repeatedly been held to be limited to the highway, as constructed, being out of repair, and not to require any additional or new erection; citing McKellar v. Detroit, 57 Mich. 158; Agnew v. Corunna, 55 Id. 428; McArthur v. Saginaw, 58 Id. 357; Engine Works v. Kimball, 52 Id. 146; Woodbury v. Owosso, 64 Id. 239.

4. The question as to whether or not a jury was the proper tribunal to determine the necessity for a railing at any particular

locality on a highway did not come before the Court in *Sharp v. Township of Evergreen*, 67 Mich. 443, and was not considered in any manner.

5. How Stat. § 1366, has provided for the erection of railings where a highway along the bank of a lake, etc., has been narrowed by washing away, and no provision is made for putting up such safeguards in any other places, thus leaving it to the judgment of the proper officers to decide where such railings are or are not necessary. See *Carver v. Plank Road Co.*, 61 Mich. 584, 585.

6. Evidence of the custom and usage, generally, as to placing *barriers* or railings on the sides of similar embankments on highways was admissible; citing *McKellar v. Detroit*, 57 Mich. 158; Story, Bailments, § 11; *Raymond v. Lowell*, 6 Cush. 524; *O'Linda v. Lothrop*, 21 Pick. 292; *Underwood v. Carney*, 1 Cush. 285; *Gerrard v. Cooke*, 2 Bos. & P. N. R. 108; *Monongahela City v. Fischer*, 111 Penn. St. 9; *Richardson v. Turnpike Co.*, 6 Vt. 496; *Steiner v. Coxe*, 4 Penn. St. 13; *Woods v. Galbreath*, 2 Yeates, 306; *Dumont v. Kellogg*, 29 Mich. 420; *Gould v. Boston Duck Co.*, 13 Gray, 442.

*Blair, Kingsley & Keinhans* (*Thompson & Temple*, of counsel), for plaintiff, contended:

1. Want of railings necessary to the security of travelers is a defect in a way within the meaning of the statute making townships answerable for damages sustained by reason of any defect in a way; citing *Hayden v. Attleborough*, 7 Gray, 338; see, also, *Norris v. Litchfield*, 35 N. H. 271; *Hyatt v. Rondout*, 44 Barb. 391; *Plymouth v. Graver*, 125 Penn. St. 24; and it seems to be uniformly held that the absence of railings or barriers at dangerous places is a defect for which the town is liable; citing *Adams v. Natick*, 13 Allen, 429; *Alger v. Lowell*, 3 Id. 402; *Woodman v. Nottingham*, 49 N. H. 387; *Joliet v. Verley*, 35 Ill. 58.

2. Evidence of the custom in Kent county not to have barriers on highway embankments was properly excluded; citing *Champaign v. Patterson*, 50 Ill. 65; *Hinckley v. Barnstable*, 109 Mass. 126; *Kenworthy v. Ironton*, 41 Wis. 647; *Perkins v. Fon du Lac*, 34 Id. 435; *Hubbard v. Concord*, 35 N. H. 60; *Littleton v. Richardson*, 32 Id. 59; *Hyatt v. Rondout*, 44 Barb. 385; *Tripp v. Lyman*, 34 Me. 250.

LONG, J.　This action is brought by the plaintiff as administrator of the estate of Walter S. Gee, deceased,

against defendant township, to recover damages on account of the death of Walter S. Gee, which the plaintiff alleges was caused by the wrongful negligence of the defendant to keep in good repair, and in a condition reasonably safe and fit for travel, a certain highway in that township. Plaintiff on the trial in the court below, before a jury, had a verdict and judgment for $2,500. Defendant brings error.

Forty-nine errors are assigned. Ten of the assignments of error are based upon the ruling of the court in the admission and rejection of evidence during the trial. Twenty-one of such assignments of error are based upon the refusal of the court to give defendant's written requests to charge, and the balance of such assignments are based upon certain portions of the charge as given.

The circumstances under which Mr. Gee received his injuries are not much in dispute, and are stated very fully in the brief of counsel for defendant.

It appears that a party of ladies and gentlemen, including plaintiff's intestate and the plaintiff, all residents of the city of Grand Rapids, had arranged to make a visit and spend the evening at the residence of Mr. A. J. Gill, which is situate in the township of Walker, about two and a half miles west of the city of Grand Rapids, on the south side of the highway called "Bridge Street Road," running from the city westward to the Grand river, a distance of about ten miles. Plaintiff's intestate, who was part owner of a livery stable, furnished the conveyance, team, and driver, for which he was paid by the party. The conveyance provided was a long carry-all on wheels, of peculiar and unusual build, being more than twenty feet long, made without any reach, with a "gooseneck" forward supporting the driver's seat, and under which the fore-wheels turned. The seating room for

passengers extended from behind the goose-neck backward several feet beyond the hind axle, and it was entered from behind by a step; the seats running lengthwise, and being over fifteen feet long. The vehicle was so constructed that when loaded the weight of the passengers rested almost entirely on the hind axle. The tread of the wagon was wider than usual, the wheels being nearly a foot further apart than in ordinary wagons. It was drawn by four horses, the pole being attached to the collars of the wheel-horses by pole-straps, no neck-yoke being used.

The party arrived at Mr. Gill's house between 8 and 9 o'clock in the evening, and remained till about one o'clock in the morning of February 25, 1887, when they started to return in the same conveyance. There were 26 full-grown persons, including the driver, in the load, one of whom, the plaintiff, besides the driver, sat on the driver's seat. Two of these persons, plaintiff's intestate and Mr. Fred Clark, rode standing on the hind step; and the remainder, 9 gentlemen and 13 ladies, in the seating room of the carry-all, the most of the ladies being in the forward part. The road at this time was covered with snow and ice. There had been several sunny days, and the snow had somewhat thawed in the day-time, but had frozen again at night. The conveyance was on wheels, though for some part of the way on this highway the sleighing was good, and sleighs were being generally used.

A short distance from Mr. Gill's, on this road towards the city, over which the party started to return, was a valley between two hills. The road began to descend towards the east shortly after leaving Mr. Gill's gate, and continued to descend for about 12 to 15 rods, until it reached an embankment constructed across the valley from hill to hill, a distance of about 18 rods. This embankment was from 12 to 16 feet wide at the top, with sides

sloping at a grade of about one foot perpendicularly to one and one-half feet horizontally, being at the point where the accident occurred from 9 to 10 feet high above the natural surface, and some 17 feet on the grade to the bottom of the embankment. It had no railings or barriers at the sides. The traveled track of the highway passed over this embankment, and there was a well-defined traveled track, with tracks of teams and vehicles worn down into the snow and ice forming two parallel troughs, from 2 to 4 inches deep, with a cone or raised ridge between them, along about the middle of the embankment; the track on the hill approaching it not being so well defined, as teams in descending the hill had not followed any particular track until they came to the embankment.

Near the top of the hill, near Mr. Gill's, there was a hollow place, which had been washed out by a thaw in the early part of the winter. This place had been marked by a stake, and Mr. Gill accompanied the party with a lantern to guide them by this hollow, which he did, the team keeping to the south side of the road as they went down the hill. The night was cold and frosty, and the road on the hill-side and across the embankment was icy and slippery. There was no moon, but it was not a dark night, being light enough for the driver to see the traveled track 10 or 15 rods ahead of his team. After the team passed the hollow place, Mr. Gill left them, and returned home, and the vehicle proceeded down the hill, the horses going at a pace between a trot and a walk, keeping to the south side of the road-way until they approached the bottom of the cutting, and the beginning of the embankment. At this point there was a water-break, being a slight elevation crossing the road to turn the water which might flow down through the cutting to the sides of the embankment. On approach-

ing this, the team and vehicle being on the south side of the road, the driver undertook to bring them into the traveled track, so that both off wheels should be on the south side of the ridge or cone, above mentioned, and both near wheels should be on the north side of it, and for that purpose drove his team somewhat to the north, and then along the center of the traveled track.

It appears that the fore wheels, in coming on to the embankment, took the traveled track as intended, but the hind wheels did not follow them, and, going too far to the north, both of them got wholly on the north side of the cone, and thus failed to track with or follow the fore wheels. The wagon proceeded along, the team and fore wheels keeping the track, and the hind wheels keeping out of it, and getting further and further out towards the north edge of the bank. The driver, giving his attention to his horses, did not notice the hind part of the wagon. Mr. Gee, the deceased, and Mr. Fred Clark, standing on the hind steps, did not notice this condition until the wagon had passed some 12 rods from this water-break, when the hind part of the wagon had worked quite over to the north edge of the bank, the fore wheels remaining in the traveled track. Then a slight jolting was noticed, and deceased and Clark jumped to the ground, deceased putting his shoulder to the north side of the wagon, apparently endeavoring to push it back onto the roadway by his own strength. About this time the hind axle broke close to the off (or south) hind wheel, and the hind part of the wagon immediately slid sideways down the embankment, and the horses being still in motion, and the driver knowing nothing of anything being wrong until the hind end of the wagon began to go down. The entire conveyance moved forward, from the place where the axle broke, about 40 feet, before stopping. The fore wheels and fore part of the wagon remained on the roadway, and the hind

part slid around so that the rear was at the foot of the bank, some 17 feet from the top of the bank, the driver remaining on his seat until the horses were unhitched. None of the persons remaining in the wagon were injured.

Mr. Gee, the deceased, being on the north side of the rear end of the wagon when it went over the edge, was thrown some distance down the bank, and in some manner received a blow on the head. At first he did not appear seriously hurt, and took an active part in unhitching the horses, and went back with a greater part of the party to Mr. Gill's house to obtain some other conveyance. Having obtained a sleigh at Mr. Gill's, and the offer of another at Mr. Edison's, about a quarter of a mile further west, Mr. Gee started with Edison to walk there and get it, another of the party accompanying him with a pair of horses. During this walk Mr. Gee complained of a severe pain in his head, where he had received a blow, and returned to Gill's and laid down, and shortly after became unconscious, and died a few days thereafter from the effects of it.

The only ground upon which any attempt is made to hold the township liable is the alleged neglect to provide barriers or railings along the sides of the embankment in question. The court in instructing the jury stated that, to entitle the plaintiff to recover, he must prove, by a fair preponderance of evidence,—

1. That the highway at the place where Walter S. Gee received the injuries which caused his death was not in good repair, and in a condition reasonably safe and fit for travel.

2. That the defendant had reasonable time and opportunity after said highway became unsafe and unfit for travel to put the same in a proper condition for use, and had not used reasonable diligence therein.

3. That at the time said Gee received said injury both he and the driver were exercising proper care and cau-

tion, and that no negligence of either contributed to the injury of which complaint is made.

4. That Mr. Gee's death was caused by injuries which he then received, and that his next of kin, the persons entitled by law to distribution of his personal estate, have sustained pecuniary loss by his death.

The defendant in its first request asked the court to charge the jury that, under the pleadings and proofs, as no liability was shown, the plaintiff was not entitled to recover. This request the court refused, but charged the jury:

" You will first consider and determine the question whether this portion of the highway where the accident occurred was in a condition reasonably safe and fit for travel, and in this case that question will depend upon your solution of another question, viz., whether or not suitable railings or barriers along the sides and at the top of the embankment in question were necessary to render the highway reasonably safe and fit for travel."

The question of the negligence of the defendant under the charge as given was therefore made to depend upon the question of the duty of the defendant to erect and maintain these barriers, and, under the circumstances surrounding the case, was left as a question of fact for the determination of the jury. It is contended by defendant's counsel that this was error.

It appears that this highway had been used there for 25 years; that the town had done work on this embankment during the spring and summer prior to the accident, when it was raised about 15 inches, all the statutory labor during that year being put on this fill. There never was any railing or barrier of any kind on either side of the embankment. The actual condition of the hill and embankment was well known to the town officers, the supervisor, justice of the peace, town-clerk, and commissioner of highways having passed over it during the winter and spring before the accident, and Mr. Edison. the over-

seer of that road-district, lived on that road, within 40 rods of the place of the accident, passing over it every time he went into the city.

Plaintiff's counsel in their brief assign the following as the reason of the accident: The accident did not occur because of any slipping or sliding of the wagon. It was one that might have happened on such a road as well in July as in February. It was simply one of those affairs by which a man gets unconsciously and imperceptibly out of the beaten track, either when he is on foot or driving in the night-time, and especially after being compelled to deviate from the straight traveled way by obstructions in his pathway which he must necessarily go around. That the immediate and proximate cause of the injury in this case resulted from—

*First,* the narrow top or surface of the artificial embankment;—

*Second,* the want of any barriers or guards along the sides to prevent vehicles from going over in the night-time.

It is claimed by plaintiff's counsel that, owing to the steep embankment, and anticipating the results likely to ensue to travelers in passing over it in the night-time, it was the duty of the township at this particular place to cause barriers and guards to be erected in order to secure a reasonable degree of safety for public travel, and that the circumstances of the case bring it within the provisions of the statute requiring townships having the care and control of the highway to keep the same in good repair and in a condition reasonably safe and fit for travel. At least, the question was one for the jury to decide, under the circumstances, whether the road was in such condition, and whether it was the duty of the defendant township to erect such guards or barriers. Outside this statute there is no liability.

The defendant's counsel claim that a township cannot be held liable on account of a plan or scheme of construction of a road, either as to height, width, or want of barriers. Counsel cite the following cases as sustaining these views: In _Detroit v. Beckman_, 34 Mich. 125, the plaintiff's intestate was killed by running the wagon which he was driving off the end of a culvert, and overturning into a ditch. The negligence alleged was that the city erected too short a culvert, and left too much of the ditch open and unprotected. It was not alleged that there was any negligence whatever in the construction, except that which pertained to the plan itself. This Court laid down the rule in that case that,—

"When complaint is made that the original plan of a public work is so defective as to render the work dangerous when completed, it is apparent that the fault found is with legislative action, and a suit grounded upon it is grounded on a wrong attributable to the legislative body itself; for the determination to construct a public work, and the prescribing of the plan, are and must be matters of legislation, whether done on behalf of the State by or under the direction of its legislative body, or on behalf of a county, town, or city by or under the direction of the proper board or council. In carrying out of the plan there may be negligence attributable to ministerial officers, but negligence in the plan itself must be attributed to the body that devised, ordered, or adopted it."

The Court further said:

"In this State the question which lies at the foundation of this suit is not an open one. In _Larkin v. Saginaw Co._, 11 Mich. 88, it was decided that no action would lie for an injury resulting from an exercise of legislative authority. In _Pontiac v. Carter_, 32 Mich. 164, which was a case of injury, by change in the grade of a street, to buildings previously erected with reference to an established grade, the point was quite fully discussed, and the liability of the city denied."

In _Lansing v. Toolan_, 37 Mich. 152, the same principle

was stated, and the case of *Detroit v. Beckman, supra,*
cited and approved. In *Toolan v. Lansing,* 38 Mich. 315,
the case was again before this Court, and *Detroit v. Beck-
man* again cited, and the doctrine there laid down
approved.    In *Davis v. Jackson,* 61 Mich. 530 (28 N. W.
Rep. 526), where the action was brought to recover dam-
ages for injuries to the plaintiff in driving his carriage
against a stone placed on the end of a culvert and being
overturned, the defendant asked the court to instruct the
jury:

"4. If you find that the placing of the stone in ques-
tion at or near to the end of the box-drain by the defend-
ant was a part of the plan for improving the street by
putting in the drain, and protecting the end of the drain
and the traveling public from injury or accident by 'plac-
ing the stone in the position where it was at the time of
the accident, the plaintiff cannot recover."

" 9. The wrong which must exist, to render the city
liable, is neglect, and there can be no ·neglect when the
work was completed as intended.   Negligence cannot be
predicated on a work done in accordance with its design
or plan, even though it does not sufficiently protect the
public."

It was held that these instructions were proper, under
the circumstances, and should have been given.   These
cases all arose prior to the statute under which plaintiff
claims to recover, except *Davis v. Jackson, supra,* which
we think clearly distinguishable from the present case.
The circumstances there tended to show that the city had
placed some barriers at the ends of the culvert for the
very purpose of preventing persons running off the end.
The plaintiff ran against the barrier itself, and was
injured.   Since the present adoption of the present stat-
ute there has been no decision of this Court laying down
the rule now contended for by defendant's counsel.   The
statute is imperative.   Section 1445, How. Stat., provides:

"It is hereby made the duty of townships, villages,

cities, or corporations to keep in good repair, so that they shall be safe and convenient for public travel, at all times, all public highways * * * under their care and control, and which are open to public travel."

Sections 1442 and 1443 provide the penalty for such neglect, and authorize the bringing of suit by the party injured. It is, however, provided—

"That in all actions brought under this act it must be shown that such township, village, city, or corporation has had reasonable time and opportunity, after such highway * * became unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein."

This act was passed in 1879. Act No. 244, Laws of 1879. The act of 1887 (Act No. 264), superseded and repealed the act of 1879, but the provisions of this act are very similar to the provisions of the act of 1879, and the same duty is laid upon townships, etc., to keep the highways in repair. Precisely the same question raised by counsel for defendant was presented to this Court in *Alexander v. Big Rapids*, 76 Mich. 282 (42 N. W. Rep. 1071), and there fully considered. In that case (at page 284), it was said:

"Nor can the city escape responsibility because the cross-walk was removed in the improvement of Rose avenue, on the principle enunciated in *Detroit v. Beckman*, 34 Mich. 125, and other cases cited. While the city of Big Rapids was improving Rose avenue, or even after the improvement had been completed, it had no right to leave Pine street, which crossed Rose avenue, open to travel, unless the crossing of those two streets was made reasonably safe and fit for travel."

In *Joslyn v. Detroit*, 74 Mich. 458 (42 N. W. Rep. 50), it was also held that this statute makes the municipality not only liable for injuries resulting from a neglect to keep the highway in repair, but also to keep the same in a condition reasonably safe for travel. Whether this

highway was in such a condition, it seems to us, was a question for the jury, under the circumstances here stated.

The negligence complained of was the want of any barriers or railings along a highway leading out from a populous city, and over which was a great amount of travel, the embankment being built up between two hills to such a height and so narrow that persons driving there might be in danger of being precipitated over the embankment, and the neglect to place some kind of barriers there would, under the circumstances here stated, become a question of fact for the determination of the jury whether the township had neglected a duty which this statute imposes, and the question was fairly submitted under the charge as given.

In *Township of Plymouth v. Graver*, 125 Penn. St. 24 (17 Atl. Rep. 249), a somewhat similar question arose under a statute of Pennsylvania. The statute provided that such roads should be kept constantly in a state of repair, and that at all seasons they should be kept clear of all impediments to easy and convenient traveling, at the expense of the township. It was held that where plaintiff's horse traveling on a highway, and parallel with and adjoining a railroad, took fright at a locomotive, ran upon the track, and was killed by the cars, it was for the jury to say whether the township supervisors were negligent in not erecting a barrier between the highway and the railroad.

In *Sharp v. Township of Evergreen*, 67 Mich. 443 (35 N. W. Rep. 67), an action was brought to recover for injuries sustained by plaintiff in being overturned upon a public highway. It appeared that plaintiff was driving with her husband along a public highway, and that in descending a sand hill, where the road had been raised to the height of fifteen feet, and left about sixteen feet

wide, unprotected on either side by any railing or other structure to prevent persons or teams from going off the bank at the sides in case of accident, the horse shied to the side of the track, and, becoming unmanageable, went off the embankment, taking the carriage with him, and seriously injuring the plaintiff. It was held by this Court that it was a question for the determination of the jury, under the circumstances, whether the road was kept in reasonable repair and safe for travel.

This statute cannot be given a construction that would relieve a township or other municipality, upon which a burden is cast to keep its highways in repair and reasonably safe for travel, from liability by saying that it had adopted a method of construction, and had built according to the plan. A municipality cannot construct a dangerous and unsafe road,—one not safe and convenient for public travel,—and shield itself behind its legislative power to adopt a plan and method of building and constructing in accordance therewith. The negligence consists, not in the plan of the work or the manner in which it was done, but in the failure to provide suitable protection against accident after the embankment had been made. The statute is imperative to make a road reasonably safe, and whether it is in that condition of safety and fit for travel must be a question for the jury, under proper circumstances.

If this road-way was built at such height between hills and so narrow that it required barriers to make it reasonably safe, it became the duty of the township to erect them, and, failing in this, the township must be held to suffer the consequences of such neglect. It seems to be uniformly held that the absence of railings or barriers at dangerous places along a public highway is a defect for which the town is liable. *Harris v. Township of Clinton,* 64 Mich. 447 (31 N. W. Rep. 425); *Adams v. Natick,* 13

Allen, 429; *Alger v. Lowell,* 3 Id. 402; *Palmer v. Andover,* 2 Cush. 600; *Woodman v. Nottingham,* 49 N. H. 387; *Joliet v. Verley,* 35 Ill. 58; Whart. Neg. § 976. In a note to 9 Amer. & Eng. Cyclop. Law, p. 381, tit. "Highways," it is laid down as a rule of law that in those cases where the erection of railings or barriers along the highway is a reasonable and necessary precaution to guard travelers against injury, the municipality is bound to provide such safeguards, and will be held liable for a failure in this regard; citing *Haskell v. New Gloucester,* 70 Me. 305; *Stack v. Portsmouth,* 52 N. H. 221; *Davis v. Hill,* 41 Id. 329; *Palmer v. Andover,* 2 Cush. 600; *Rowell v. Lowell,* 7 Gray, 100; *Babson v. Rockport,* 101 Mass. 93; *Freeport v. Isbell,* 83 Ill. 440; *Koester v. Ottumwa,* 34 Iowa, 41; *Bassett v. St. Joseph,* 53 Mo. 290; *Kennedy v. Mayor, etc.,* 73 N. Y. 365; *Atlanta v. Wilson,* 59 Ga. 544; *O'Leary v. Mankato,* 21 Minn. 65; *Pittston v. Hart,* 89 Penn. St. 389; and other cases.

If the township could not make this embankment there reasonably safe and fit for travel in adopting a plan of construction, they were not compelled to construct a highway over the place, or to maintain it, and it could have been closed to public travel until put in safe condition. But having constructed it, and invited the public to travel over it, their duty under the statute was plain. It appears that the direct and immediate cause of the injury was the unguarded condition of this high embankment. If any sort of barriers had been placed along its sides, so that the hind wheels of the vehicle could not have traveled so far over the side, no accident, apparently, would have happened.

It is true that no complaint was made to the officers of the township whose duty it was to maintain the road in a safe condition, yet, as we have stated, it did appear that they lived in close proximity to the place, and some

of them frequently passed over it, and must be held to have had such knowledge or notice of its defective condition as the statute requires to fix the liability. It is contended that the evidence shows that the occurrence was a pure accident. We do not so regard it. It was a question for the jury to find whether it would have occurred if the highway had been in proper condition, and this question was left to them under the charge of the court.

It is also claimed that a sleigh was the only proper vehicle to be used on that highway at that season of the year. The evidence, however, shows that at many places along the highway out from the city that night the snow had melted off so that the ground was bare in places, and that a vehicle on wheels was better and more easily drawn.

It is also claimed that this particular vehicle was unsuitable, and not road-worthy, being unwieldy and unmanageable. This question was left to the jury under the charge of the court, and they have determined otherwise. It was a question of fact for them.

The court, also, in a very full charge, and in which we find no error, left the question of the contributory negligence of the deceased and of the driver to the jury. We shall not, therefore, discuss the questions raised under the assignments of error relating to that branch of the case further than to say that if by the carelessness of the defendant in constructing and maintaining a dangerous highway there,—one not fit and safe for public travel,— and by reason of such defects and dangerous condition the hind wheels of the wagon slid over the embankment, and the wagon was liable to be overturned, and the parties then and there in the wagon, under the charge of the deceased, liable to meet with great bodily injuries, it was not negligence on the part of the deceased to use all due care to prevent the overturning and consequent injury to

the parties in his charge. The fact that he alighted and placed his shoulder to the vehicle to prevent the accident could not be charged as negligence. If it was the negligence of the defendant in not repairing the highway which placed the deceased and those under his charge in a perilous position, no negligence could be imputed to the deceased, if, acting upon that occasion, as it appeared to him to be, for the safety of himself and party in his charge, he did not take the precaution which upon consideration a more prudent man might have taken. At least it was a question for the jury, and fairly submitted.

Counsel for defendant has devoted great space in his brief, and urged the same in his oral argument here, that the court erred in refusing to permit defendant to give in evidence the custom and usage generally as to placing barriers or railings on the sides of similar embankments on highways; and it is contended that travelers have no right to expect more than the usual and customary safeguards, and that it would be unreasonable to expect any township to use extraordinary or unusual means to insure safety to travelers. Under the circumstances here stated, we think that there is no force in this contention. The statute itself imposes the duty, and the municipality cannot be heard to say that because some other municipality has failed in its duty it can be excused from liability arising from such neglect. Neither do we see how the action of the officers of some other locality could in any way have influenced the officers of the township in constructing this embankment. But, however that may have been, their duty was plain, and no such excuse could avail.

Complaint is also made of the charge of the court upon the measure of damages. We have read the charge, and do not think it open to criticism. We do not need

to discuss all the errors assigned, or the refusal of the court to give defendant's requests in charge to the jury. The charge as given was fair and very full, submitting all proper questions to the jury, and we find no error in the refusal to charge the requests. Many of them were covered by the general charge, and in so far as they were not so covered we do not think there was error in refusing them. Upon the whole record we may add that we think the case very fairly tried, and fully and fairly submitted, and we see no good reason for disturbing the verdict.

The judgment must be affirmed, with costs.

SHERWOOD, C. J., and MORSE, J., concurred with LONG, J.

CAMPBELL, J., (dissenting). I do not think that plaintiff made out a case for recovery. It is hardly necessary to enlarge on the reasons why I do not concur in the views of my Brother LONG, further than to indicate their general tenor.

This road, which is a short causeway between higher grounds on either side, appears to have an ordinary driveway, quite as wide as is usual in country roads. It differs from the common level roads only in needing and having no roadside ditches. It has existed a long time, and that is of itself one of the strongest reasons why defendant cannot be regarded as negligent in not changing what, so far as appears, has been considered a safe road. I do not understand that the laws of 1879 and 1887 purport to impose a duty on the local authorities of changing existing roads in any particular. Neither do I think courts or juries can dictate to highway authorities the use of barriers on a road bordering on no cliff or stream, which are very unusual, and which very few persons would ever think of putting up in such a place.

The accident which happened here would have happened to the wagon just as probably and just as badly on a road of the same width bordered by ditches. The deceased was perfectly familiar with the road, and knew, if any one did, in what way it was capable of causing mischief. Common highways are made for usual vehicles, and a township cannot be required to make a road-way so wide that it will furnish space for the slidings and swervings of a wagon so long that it would with its team find it impossible to turn aside, to say nothing of turning round, in twice the space required by law for any road-way. The crowning of the center of the road was not only to be expected at the season, but it was not unknown to deceased, and it was his duty, as well as that of his driver, to keep an eye upon the manner in which the wagon was moving, and see that it was properly driven. The direct cause of the movement of the wagon was beyond any doubt the failure of deceased and his driver to do this, and if they were excusable for using wheels instead of runners at such a time and place, and with such an unwieldy carriage, they were bound to look to their movements.

It is also clear that the condition of the road was not the proximate cause of the death of deceased. If he had been killed or thrown down while in the wagon, this might perhaps have been traced directly to that source. But those who stayed in the wagon came to no harm. Had he been thrown from the steps, where it was not safe to stand, he could have had no one to blame but himself. But here he came to his injury by attempting to hold or push this enormous wagon up a slope by his own strength,—a thing that was preposterous in itself, and which was certain to sweep him away with any slip. It is impossible, it seems to me, to hold that he did not

directly contribute to his injury, and · he was in fact not merely aiding in it, but its primary cause.

I am not prepared to depart from what I conceive to be the settled law of this State, or to hold that the proper or best methods of building roads is among the presumable accomplishments of average jurors.   The officers intrusted with that discretion are selected under the law to act on their best judgment, and I do not believe their judgment is open to revision, unless so monstrously perverted as to show they have never used their discretion at all.   We have no laws that require perfect roads, or perfect safeguards.   It is not negligence to do what is usually done in similar cases, until some statute intervenes to require it specifically.   We have no statute that requires roads in dry places to be guarded by barriers. The law of 1877, which provided for them, was repealed in 1881, except as to roads bordering on streams.   There is some reason for holding bridges to have their approaches made different from ordinary roads, partly because it is usual, and therefore expected, and practically required by statute, and partly because a road approaching is narrowed to correspond with the width of the bridge, and vehicles are more likely to miss the way, and animals are not unlikely to need looking after in driving them on it. But it is not at all usual to put up guards beside roads of even width, and with road-way as wide as our turnpikes and plank or gravel roads are required to be.   And no one would think of fencing between the road-way and the ditches, which, as before suggested, would have created the same difficulty for this wagon that existed on the highway in question.

I think there should be judgment for defendant of reversal.

CHAMPLIN, J., took no part in the decision of this case