SPECK *v.* TOWNSHIP OF BRUCE.

1. HIGHWAYS AND STREETS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BRIDGES—REPAIRS TO HIGHWAY.

Where the approach to a bridge in a public highway was undergoing repairs, but was not barred or closed to the public, and where the driver of plaintiff's conveyance had crossed the place several times, but not since the repair work had commenced, knew the general situation, saw that other vehicles had been passing over the approach, and plaintiff was injured by the buggy's sliding off planks lying in the road and down the side of the adjacent embankment, the question of contributory negligence was for the jury.

2. SAME—RAILINGS—TOWNSHIPS—GUARDING DANGEROUS PLACES.

It was the duty of the township to see that the highway was kept in a reasonably safe condition for travel, while repairs were in progress, so long as the highway had not been closed to public travel, and whether barriers, guards, or railings were necessary, in order to render the embankment and approach safe, was for the jury.

Error to Chippewa; Steere, J. Submitted June 15, 1911. (Docket No. 59.) Decided July 5, 1911.

Case by Alfreitta Speck against the township of Bruce

for personal injuries.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*M. M. Larmonth*, for appellant.

*John W. Shine*, for appellee.

Stone, J.   This is an action on the case brought to recover damages for an injury which the plaintiff sustained on the 11th day of September, 1908.   On the day of the accident the plaintiff, with her mother, one sister, and four little children, were riding in a two-seated carriage on the highway in said township, on the section line between sections 35 and 36.   The road crosses the Charlotte river by a bridge.   They drove onto the bridge from the north across the approach, which was some 15 or 20 feet long from the  natural bank to the abutment of the bridge.   The evidence varied as to the width of the approach at the bridge, some of the witnesses claiming that it was six feet wide, and others eight feet wide.   All agreed that it widened as it extended back from the bridge.   Back from the bridge, and on the west side of the wheel track, according to the testimony of the plaintiff, about 12 or 15 feet, and according to the testimony of other witnesses about 30 feet, there had been dumped a pile of gravel.   The gravel extended down into and across the wheel track, making that track there a few inches higher than on the other side.   The road at that point was 15 or 20 feet wide.   Between that point and the bridge there had been some planks laid down, extending across the roadway proper, the planks varying in length from eight to sixteen feet, and were five in number.   These planks had been put down to be used as a platform upon which to mix the cement and sand, of which certain parties, under the direction of the commissioner of highways, had been constructing wings or retaining walls running from the bridge bank to the natural bank on each side.   The work had been progressing for some little time, the retaining

wall upon the east side having been built about a week before, and that upon the west side some two or three days before the injury complained of. Between the planks and the bridge was a slight depression in the road, variously estimated by the witnesses to be from three to twelve inches deep.

It was the claim of the plaintiff that on the day named, between 5 and 6 o'clock in the afternoon, they drove down to this bridge. When they drove over the side of the pile of gravel and attempted to drive upon the bridge, they crossed the planks and the horse got upon the bridge, the forward wheels of the carriage being against the bridge in this depression. After getting that far, the evidence tends to show that the horse had some difficulty in drawing the vehicle onto the bridge; and it is the claim of the plaintiff that, while the horse was making an effort to draw the vehicle onto the bridge, the hind wheels of the carriage were jostled off the right end of the planks, and down the embankment, throwing the plaintiff out across the retaining wall and seriously injuring her back, which caused her great pain and permanently disabled her. The plaintiff's mother, Mrs. Fox, was driving the horse at the time, and sat on the front seat of the carriage on the right side thereof. The plaintiff was riding on the right side upon the back seat. The evidence tended to show that Mrs. Fox had been across the bridge on numerous occasions; that she noticed the condition of the approach; that she had driven the same horse over there before; but she testified that she had not driven the horse there since repairs had been commenced upon the highway or approach, as above stated. She testified that she saw the pile of gravel; she saw the planks and the general condition. She discovered that there were numerous tracks there, and that evidently vehicles had been passing and repassing. The work upon the bridge had not yet been completed by the party having it in charge, and a bag of cement was left lying near, or upon the pile of gravel. The testimony tending to support the plaintiff's claim was

of considerable length, and at the close of the plaintiff's case the defendant moved for a directed verdict. This was refused, the refusal excepted to, and evidence was put in by the defendant. The case was submitted to the jury by the circuit judge, and a verdict for the plaintiff was found in the sum of $375, and judgment followed. There was no motion for a new trial. The case has been brought here by the defendant upon writ of error, and there are 10 assignments of error.

The first error alleged is to the effect that the court erred in denying defendant's motion to take the case from the jury at the close of the plaintiff's case, for the reason that she was guilty of contributory negligence as a matter of law.

The second, third, and fourth assignments of error relate to the refusal of the court to give defendant's requests to charge. We think it unnecessary to repeat them here, as we shall have occasion to refer to the same subject-matter in discussing the errors alleged in the charge of the court. The remaining assignments of error are as follows:

"(5) The court erred in charging the jury as follows:

"'It appears that the approach to this bridge was a graded or raised way. It is the law that where a roadway is built at such a height between hills, and so narrow as to require barriers or railings to make it reasonably safe and fit for public travel, it becomes the duty of the proper township to erect such barriers, and, failing to do so, it is held liable for injuries which result from such neglect of duty.'

"(6) The court erred in charging the jury as follows:

"'Now, the duty of the township to erect railings, or barriers, along a highway which passes over an embankment, depends upon the width of the traveled way somewhat, and upon the facts and circumstances attending the case generally. And it becomes a question of fact for the jury to say whether or not the barriers should be erected at the place in question. The law which requires them to keep the highway reasonably safe and fit for public travel, requires that where, under the facts and circumstances of the case, on a portion of a road crossing a ravine or depression, and being so

raised, it is necessary to put railings or barriers, so that it would be safe and fit for travel, then the township should do so, and it is a proper question of fact in this case for you to determine whether or not barriers were necessary in that place and in that connection. If they were necessary, but were not put there, and the injury occurred by the plaintiff, who was riding with her mother, going over this embankment, through no fault of theirs, then the township would be liable by its failure to erect those barriers which were necessary to keep the highway in a condition reasonably safe and fit for travel.'

"(7) The court erred in charging the jury as follows:

"' It is claimed that this place was not as safe as other portions of the road at least, although it was open to travel; repairs were being made there, or had been a short time before. But you are instructed that the fact that repairs were in progress there would not relieve the township of liability, if the township left the road open for travel and invited the public to use it, because it is the law that when it becomes necessary to repair a portion of the road, and when repairs which are necessary to be made make the road unsafe and unfit for travel, then it is the duty of the township authorities to close the road temporarily and while it is in an unsafe condition by reason of the repairs being made.'

"(8) The court erred in charging the jury as follows:

"'This road was being used at that time, according to the undisputed testimony, and you are instructed that, although Mrs. Fox, who was driving the rig, knew that the approach was narrow and somewhat dangerous, yet, if it was open to the public and in use, and she knew those facts, she would not be guilty of negligence simply by going upon that portion of the road and trying to use it.'

"(9) The court erred in charging the jury as follows:

"'It would not be negligence for her to try to pass over this, because it was somewhat narrow, and not as safe as other portions of the road, even though that fact was well known to her. For it was a public highway, open to the public, and in use by others, and if under those circumstances, as they appeared to her at the time, it was feasible for her, exercising due care, to cross as others had, she would not be guilty of negligence simply by attempting to cross. But, in that connection, under those circumstances, and with such knowledge of the conditions, the law would make it incumbent upon her to use care and caution and prudence, according to the circumstances as known by her, and as they presented themselves at the time. In the first place you will remember that if you find that the

road in question was reasonably safe for travel, and could have been passed over in safety by a person using ordinary care, then the township would not be liable — would not be guilty of negligence, and your verdict should be for the defendant. But it is a question of fact for you to determine whether or not that was the case.'

"(10) The court erred in charging the jury as follows:

" 'It is a question of fact for you to determine whether the narrowness of the road, the want of railings or barriers, the plank or material on the approach, the depression at the bridge, or all of these defects combined, was the cause of this injury.'"

1. The principal contention in the case, as urged in the defendant's brief, and in the oral argument of counsel, is that plaintiff was guilty of contributory negligence as matter of law, and that the court should have directed a verdict for the defendant for that reason; the plaintiff being chargeable with the negligence of the driver.

We have examined the testimony with care and the authorities cited by counsel, and are of opinion that it cannot be said upon this record that the plaintiff was guilty of contributory negligence as matter of law. There was a sharp conflict in the testimony as to the situation of the premises, and the circumstances of the injury. We are of opinion that a question of fact for the jury was presented, and that the case is ruled by the numerous decisions of this court, of which the following are a sample: *Harris* v. *Township of Clinton*, 64 Mich. 447 (31 N. W. 425, 8 Am. St. Rep. 842); *McTiver* v. *Township of Grant*, 131 Mich. 456 (91 N. W. 736); *Belyea* v. *City of Port Huron*, 136 Mich. 504 (99 N. W. 740); *Judd* v. *Township of Caledonia*, 150 Mich. 480 (114 N. W. 346). The case last above cited is very similar in some of its circumstances to the instant case. There, as here, no barriers, or warning signs, were erected to prevent people from using the road, or premises. See, also, the recent case of *Priebe* v. *Township of Moorland*, 162 Mich. 110 (127 N. W. 19).

2. A more serious question arises in the case as to

whether, under the last six assignments of error, there was error in the charge of the court submitting to the jury, as it did, the question whether it was the duty of the township to errect railings, or barriers, along that portion of the highway which passed over the embankment, under the circumstances of the case; it appearing that the highway was being repaired under the direction of the commissioner of highways, so that it may be said that such repairs were in progress. But we have examined that portion of the charge with some care, and, it appearing from the testimony that the highway had not been closed by the township authorities, but was left open to travel, and there was present evidence that the highway was being used at the time by the public, we think the duty of the defendant still continued to see that the highway was kept in reasonable repair, and in a condition reasonably safe and fit for travel. We find the doctrine well supported by authority, both in this and other States, to this effect:

" While a highway is undergoing repair, ordinary care must be taken to prevent injuries to travelers thereon. If the way becomes dangerous or impassable, it must be protected, and fences, barriers, or other means must be used to warn travelers of the danger. The obligation to keep the way in reasonable repair generally continues until the street is lawfully discontinued " or closed. Elliott on Roads and Streets, § 803, citing *Southwell* v. *City of Detroit*, 74 Mich. 438 (42 N. W. 118).

"A duty rests upon the municipality to care for travelers while a highway is undergoing repair, as by a barrier or fencing; mere warning being held insufficient." 37 Cyc. p. 287, and cases cited in note.

Among others being *Bills* v. *Kaukauna*, 94 Wis. 310 (68 N. W. 992); 28 Cyc. pp. 1284, 1350, 1405, and cases cited in note 58. See, also, *Joslyn* v. *City of Detroit*, 74 Mich. 458 (42 N. W. 50); *Alexander* v. *City of Big Rapids*, 76 Mich. 282 (42 N. W. 1071); *Hamilton* v. *City of Detroit*, 105 Mich. 514 (63 N. W. 511); *Walker* v. *City of Ann Arbor*, 111 Mich. 1 (69 N. W. 87).

In *Southwell* v. *City of Detroit, supra,* it was held

that a city while grading and paving a street under the power conferred by its charter, must close to public travel that portion thereby rendered unfit and unsafe, in order to suspend the duty imposed by the statute to keep its streets, which are open to public travel, in good repair for that purpose.   In that case Justice CHAMPLIN, speaking for the majority of the court, said:

"In what manner, then, shall the city exercise the power so as not unnecessarily to suspend or circumscribe the duty?  The answer is plain.  By closing to public travel that portion of the street which is rendered unfit or unsafe by the exercise of the power.  The city, through the corporate authorities, has full control over the streets. It has the right to exclude public travel from that portion of the street which is being graded and paved; and such exclusion is not only proper, but usual, not only for the protection of the public, but of the improvement which is being made.  The statute only imposes the duty as to streets '*which are open to public travel.*'  So long, therefore, as the city permits the street to remain open to public travel, so long the duty and consequent liability remain.   *   *   *   It may be necessary, while repairs are being made upon a highway or bridge in the country, to exclude public travel from that portion until it is rendered safe and fit for public travel, and no one doubts the right and duty of officials to do so.  The power to improve and repair, and the power to exclude, are to be exercised so far as may be commensurate with the necessities of the case.  In one case the public may be excluded from a portion of the street, and in another the entire width.  In the case at bar the street was being graded and paved the full width of the traveled way.  To suspend the duty the public should have been excluded, by the erection of sufficient barriers, from the whole street to the point where the improvement had progressed.  This the city neglected to do, but left the street open to the public travel in its unfit and unsafe state.  The result was the injury to the plaintiff."

It being undisputed that the bridge and highway were open to public travel, and had not been closed by the defendant during the repairs, it must be held that the duty to keep the highway and approach to the bridge in a rea-

sonably safe condition for travel was a continuing duty, and had not been suspended pending the improvements under the direction of the commissioner of highways. In our opinion, therefore, the doctrine of the case of *Malloy* v. *Township of Walker,* 77 Mich. 448 (43 N. W. 1012, 6 L. R. A. 695), and the numerous cases in this court which have followed that case, applied. here.

We find no error in the record, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and BIRD, BROOKE, and BLAIR, JJ., concurred.