PRIEBE *v.* TOWNSHIP OF MOORLAND.

1. BRIDGES — CONTRIBUTORY NEGLIGENCE — KNOWLEDGE OF DANGER—INSUFFICIENT RAILING.
    The question of contributory negligence in failing to take another road, or to lead his team, is one of fact, where, in crossing a bridge which plaintiff knew had no sufficient railing, one of his companions, who was driving, guided the horses off the edge, in the darkness.

2. DAMAGES—SUFFICIENCY OF EVIDENCE—MEDICAL SERVICES.
    The damages for physicians' services and for the value of groceries lost in driving off the bridge were properly left to the jury, under evidence showing approximately the respective amounts.

Error to Muskegon; Sessions, J.   Submitted April 12, 1910.   (Docket No. 67.)   Decided July 14, 1910.

Case by Ferdinand A. Priebe against the township of Moorland for personal injuries.   A judgment for plaintiff is reviewed by defendant on writ of error.   Affirmed.

*Stephen H. Clink,* for appellant.

*James E. Sullivan* and *R. J. Macdonald,* for appellee.

McALVAY, J.   This case is before this court upon writ of error to review a judgment obtained by plaintiff for personal injuries received, and property lost, by driving off from a certain bridge in a public highway over a ditch in said township, on a very dark night, through the failure of defendant township to maintain such bridge in a reasonably safe and fit condition for travel, and particularly because no railing or guards were maintained on the bridge.

Early in the morning of the day he was injured, plaintiff, who was 38 years of age, started from his farm in company with his brother-in-law, aged 25 years, and Charles Erickson, of the same age, with his team and wagon to drive a long distance for the purpose of attending an auction sale three miles east of Ravenna village. It was a gentle team, 9 and 10 years old.   The near (left-hand) horse was blind.   Ravenna was the village where plaintiff did his trading and was a distance of 6½ miles beyond the bridge in question.   In going to this sale that morning he had taken this highway and crossed over this bridge.   The day was cold and rainy.   He remained at the sale until 3 o'clock in the afternoon, when, in company with the two young men mentioned, he started to return. He had purchased 25 chickens at the sale which were in a box in the wagon.   He stopped at Ravenna and purchased some groceries to the amount of about $20, and then went to a saloon where the coats of the party were dried by the

stove. The weather was cold and it was, part of the time, raining hard. They remained there about an hour and the record indicates that they each had two or three drinks. The testimony is that they did not drink on the way home afterwards. They started from Ravenna about 5 o'clock with the chickens, groceries, a jug of whisky and some beer in the wagon. On account of the cold and rain they from time to time changed drivers during the 6½ miles to the bridge; each of them driving part of the way. At the time they came to the bridge Erickson was driving. His statement is that he was a careful driver; that it was dark; that he kept the road all right until he heard the horses' feet strike the bridge.

"As I struck the bridge Mr. Priebe says to me: 'Look out, you are right on the edge of the bridge,' he says. 'Haw over' (turn to the left). He had no more than said that before we were over on the left-hand side in the ditch."

The record shows that they could not see the road or the bridge, but could sometimes see the water alongside of the road. The approaches and the bridge are altogether 49 feet in length. The ditch under the bridge is about 18 feet wide with the water 3 feet deep. Side ditches at the north end of the bridge opened into the main ditch. The team fell into the smaller ditch. The wagon was bottom-side up in the main ditch with plaintiff under it; his head just above water. Erickson, by jumping, when they were going over, caught the bank of the ditch and climbed out. He then helped the other man and together they got plaintiff out from under the wagon. Erickson then ran for help to the next house, and when he returned the horses were gotten out. In the accident plaintiff's arm was broken at the elbow and is stiff. The testimony of the physician who treated him shows that the injury is permanent. Plaintiff had lived in the locality but one month. He testified that he knew the condition of the bridge.

Two errors are assigned and relied upon, as follows:

(1) That the court should have directed a verdict for defendant on the ground of contributory negligence.

(2) That the court should not have permitted the jury to find damages on account of groceries lost, and for doctor's bill paid because the proofs were too indefinite.

The first proposition is based upon the knowledge of plaintiff of the condition of the bridge for some time before the accident, and the claim that his conduct as shown by his testimony was negligent. It is urged that he did not use even ordinary care, when the law required him with his knowledge of the danger to use extraordinary care. Defendant insists that, because plaintiff did not take some other road home, or, having taken this road, did not get out and go ahead of his team, he was guilty of contributory negligence as a matter of law. We are not prepared to say that there was no question of fact for the jury upon the contributory negligence of plaintiff. In the case of *Benedict* v. *City of Port Huron*, 124 Mich. 600 (83 N. W. 614), the latest case cited and relied on by defendant, this court approved the submission of the question of contributory negligence of plaintiff to the jury, in what would appear to be a stronger case in support of the defendant's contention than the case at bar, where plaintiff's decedent on his wheel rode into the open draw of a bridge, with which he was perfectly familiar.

The charge of the learned circuit judge in the case at bar was at least as conservative as in the case last cited. He said, among other things, upon the matter of contributory negligence:

"He must satisfy you that he was exercising due care at the time of the alleged injury, and if want of due care on his part or on the part of the driver contributed in any degree to the injury he cannot recover, though it would not have occurred except for the neglect of the township in performing its duty in keeping the bridge reasonably safe and fit for travel. No matter how negligent you may find the township to have been, and no matter how defective you may find the bridge in question to have been, yet if the plaintiff was himself guilty of any negli-
162 Mich.—8.

gence which contributed in any degree to his injury he cannot recover.

"It is the claim of defendant that this plaintiff had knowledge of the defective condition of this bridge, and if you find that he did have knowledge of its defective condition, then the duty devolved upon him to exercise a greater degree of care than he would have been called upon to exercise had he known nothing about the defective condition of the bridge. In other words, no man has a right to put himself in jeopardy, and if he does, he must exercise an amount of care and caution corresponding to the danger which he incurs. And in all cases before a plaintiff is entitled to recover in a case of this character he must have satisfied the jury by a fair preponderance of the evidence in the case that upon the occasion when he received his injury he was exercising due care, and such care as a reasonably prudent and cautious person would have exercised under the same or like circumstances."

The court then proceeded to instruct the jury what it might consider in determining the case, giving at length and with great care each and every specific item of evidence in the case bearing upon the question, and covering the entire case. No other portion of this charge is questioned. We think that the question was properly submitted to the jury.

The second proposition is of a minor importance. It relates to the groceries lost, and doctor's services paid. There was evidence in the case that the doctor's bill was paid; that it was about $50; that plaintiff was treated by the doctor for about six weeks. The account was in the doctor's books, but he had been called to testify without time to get it. The testimony of plaintiff was that he paid about $20 for these groceries. Both witnesses were cross-examined. Both of these items were properly submitted to the jury. We find no error in the case.

The judgment is affirmed.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.