### RUBATT v. TOWNSHIP OF WAKEFIELD.

1. MUNICIPAL CORPORATIONS — TOWNSHIPS — RATIFICATION — CONTRACTS.
    That which the qualified electors of a township could authorize, they could subsequently ratify.

2. SAME—CONTRACT NOT INVALID WHERE LATER RATIFIED.
    A contract between a township and a contractor for the erection of a town hall is not invalid because it was signed before any vote of the electors had authorized the levy of a tax therefor, where it was recognized by both contracting parties as only tentative, and was later ratified by them.

3. SAME — TAXATION — TOWNSHIP VOTING TAX FOR TOWN HALL MAY VOTE ADDITIONAL TAX FOLLOWING YEAR.
    Under 1 Comp. Laws 1915, § 2049, authorizing a township to vote a sum of money not exceeding one per cent. of its assessed valuation in any one year for the purpose of

[1]Towns, 38 Cyc. p. 639; [2]Municipal Corporations, 28 Cyc. p. 675; Towns, 38 Cyc. p. 639; [3]Id., 38 Cyc. p. 652.

erecting a town hall, a township voting a certain sum of money for said purpose in one year may raise a further sum the following year, if one per cent. in any one year is not exceeded, since the statute prescribes no limit to the ultimate cost of a town hall.

4. SAME—EVIDENCE—TOWNSHIP RECORDS.
Two typewritten sheets, officially signed and dated and firmly attached to a page of the township general record as part thereof, are entitled to be so construed.

5. TAXATION—EVIDENCE—BURDEN RESTS UPON ONE SEEKING TO DEFEAT TAX.
The burden of establishing the invalidity of a tax rests at all times upon one seeking to defeat it.

6. EVIDENCE—PAROL TESTIMONY ADMISSIBLE TO SUPPLEMENT TOWNSHIP RECORD.
Testimony by a township supervisor that he posted the proper notices requisite under 1 Comp. Laws 1915, § 2049, to authorize the voting of a tax at a legal meeting of the electors for the purpose of erecting a town hall, was properly admitted, where the record was imperfectly kept, and said testimony was offered for the purpose of supplementing rather than contradicting the written record.

7. TRIAL—INSTRUCTIONS—MUNICIPAL CORPORATIONS—VALID TAX.
The instructions of the trial court sustaining the validity of the levy and assessment by a township of special taxes for two years under 1 Comp. Laws 1915, § 2049, for the purpose of erecting a town hall, *held,* not erroneous, under the record.

8. APPEAL AND ERROR—HARMLESS ERROR.
Error, if any, in instructing the jury that the township might be bound by the order sued on, given by it for the balance due on the construction of a town hall, is unimportant, where it is evident that the verdict of the jury was based on the *quantum meruit* rather than on the order.

9. MUNICIPAL CORPORATIONS — WARRANTS NOT NEGOTIABLE — DEFENSES AVAILABLE.
Municipal warrants are not negotiable instruments, but

⁴Towns, 38 Cyc. p. 617; ⁵Taxation, 37 Cyc. p. 1069; ⁶Evidence, 22 C. J. § 1439 (Anno); Towns, 38 Cyc. p. 620; ⁷Id., 38 Cyc. p. 667 (Anno); ⁸Appeal and Error, 4 C. J. §§ 3013, 3026; ⁹Municipal Corporations, 28 Cyc. pp. 1570, 1571.

they are assignable, subject to any defenses available against the original holder.

10. SAME—TOWNSHIP LIABLE FOR VALUE OF WORK AND MATERIAL OF WHICH IT RECEIVED THE BENEFIT.

In an action against a township by the assignee of an order given for the balance due on the construction of a town hall, plaintiff is entitled to recover the reasonable value of material, money, or expenditures furnished in good faith by his assignor, at the instance of the township officers, of which the township received, accepted, and retained the benefit.

Error to Gogebic; Driscoll (George O.), J. Submitted April 9, 1926. (Docket No. 57.) Decided July 29, 1927.

Assumpsit by Dominic Rubatt against the township of Wakefield for money, services, and materials furnished. Judgment for plaintiff. Defendant brings error. Affirmed.

*Edward W. Massie,* for appellant.

*William S. Baird,* for appellee.

STEERE, J. This action in assumpsit was brought by plaintiff as assignee of one Thomas Solar to recover for money, services, and material furnished and rendered by Solar in and ·about the construction of a town hall for defendant. From a verdict and judgment in plaintiff's favor for $2,771.90, defendant brings the case here for review upon assignments of error.

Plaintiff's declaration contains three counts. The first relates with considerable detail that in the years 1920, 1921, and 1922, defendant was constructing a new town hall, warehouse, "and other public buildings and works;" that Thomas Solar at the instance of said township procured and furnished labor and material

---

[10]Towns, 38 Cyc. p. 639.

for such construction which was "accepted, used, and appropriated by said township in the erection and construction of said buildings and works;" that defendant promised through its officers to pay him therefor, failed to do so, and thereby became indebted to him in a large amount, "to wit, seven thousand ($7,000) dollars," for which plaintiff, as his assignee, claims judgment.   The second count is based on four township orders, or warrants, amounting to $4,732.29, issued by defendant through its township officers to Solar for his proved and allowed accounts and interest thereon.   The third count is largely a repetition with varying phraseology of the first and second, with the common counts added.   Defendant pleaded the general issue with notice of three special defenses, to the effect that the orders declared on were issued in violation of law, the township board exceeded its authority in contracting with and employing Solar, and if any such contract was made by the township board as claimed by plaintiff it was in violation of the statute which prohibits letting municipal contracts on a "cost-plus" basis.   The case was tried by jury.   Motions were timely made by defendant for a directed verdict and a new trial, which were denied.   All questions raised by defendant's 40 assignments of error were properly saved for review.   They are discussed in its counsel's brief under the following separate headings: "Contract *Ultra Vires*," "Validity of Warrants and Recovery *Quantum Meruit*," "Errors in Admission of Evidence," "Errors in Charge," and "Excessiveness of Verdict."

In March, 1920, the city of Wakefield was organized within the limits of defendant township, leaving the latter destitute of a town hall.   On June 15, 1920, its township board entered into a contract with the Foster Construction Company for erection of a frame two-story town hall and sinking a well for its use, according to plans and specifications prepared by an

architect, on its selected site at Thomaston in said. township. The estimated cost therefor as stated in the contract was $29,184. The Foster Construction Company took the contract on a cost-plus basis, of 10% for its services, defendant to pay as the work pro- gressed for all material, labor, and other items of ex- pense going into the actual cost of a completed build- ing, except the contractor's cost-plus compensation. This contract was signed on behalf of defendant by William J. Weston, supervisor, and Gust Anderson, clerk. It may be noted in passing that the statute prohibiting the letting of municipal contracts on a cost-plus basis had not then been enacted, and that defense has been abandoned. Defendant's greatest possible cost-plus liability under its contract to the Foster Construction Company was but approximately $3,000.

On June 22, 1920, a notice signed by 13 resident freeholders of the township was posted in five con- spicuous places within its territory, giving notice of and calling a special township meeting to be held on July 6, 1920, at which meeting a proposition would be submitted to the electors for raising by a tax on the property in said township the sum of $25,000 for erection of a town hall. At that meeting the proposi- tion for raising said tax carried by a majority ballot vote of all electors present. Pursuant to such favor- able action by the township meeting $25,000 was levied and spread upon the tax roll for the year 1920. Some time after execution of the original contract it was decided by the township board to change the town hall plans from a stuccoed frame building to one of brick with a warehouse and sewer added, and construction work proceeded accordingly. In the year 1921 $26,000 more was voted by the electors for town hall purposes, and, in like manner as the previous year, a tax there- for was spread upon the tax roll of 1921. The brick town hall with a sewer, warehouse, well, grounds filled

and graded, cement walks built and numerous other extras within and without the building ordered by the township board, were all finally furnished and finished some time in 1922, at a total cost of $46,295.21. The legality of all these proceedings is questioned by defendant.

While the contract between the construction company and defendant was signed before any vote of the electors had authorized the levy of a tax for that purpose, the evidence is that it was but tentative, and not to be operative unless the proposed vote for raising money carried at the special township meeting. Little if any work was done until after the levy of a tax for that purpose had been authorized by the electors. Both contracting parties thereafter recognized and ratified it throughout. That which the qualified electors of the township could authorize, they could subsequently ratify. *Davis* v. *Mayor, etc. of Jackson,* 61 Mich. 530; *Commercial State Bank of Shepherd* v. *School District,* 225 Mich. 656, and cases there cited.

Under its contract with the construction company, it was defendant's duty to pay all bills for labor, material, and other necessary expenses as construction progressed. This it was able to and did do during the summer of 1920 after construction began until about October of that year, when its available funds became exhausted and it failed to meet payrolls and material bills which then fell due. The construction company declined to advance money to meet those accounts, and proceeded to suspend operations.

Thomas Solar was general foreman of the construction company in charge of the execution of this contract, and testified he had handled it as such throughout, "until the work was entirely completed." He was an employee of the construction company and in no sense a party to its contract. The claim against defendant involved here arises out of his helping the township when short of funds to meet its current bills

for labor and material and so continue construction. In reply to the question of how he happened to have a personal account with the township he explained the situation in part as follows:

"It started in this way; they issued township orders to take care of the payrolls. I used to make up the payrolls and had full charge of everything, bills and everything else. They were all o.k'd. by me before they were paid and sent to the Milwaukee office. The first start was the checks had been protested that had been issued to the men on one of the payrolls. They come to me of course for it. I took it up with the township board. We had a meeting that night. I was out to the township, out to Thomaston. I agreed I would take care of the payrolls for them. They told me they expected money pretty soon. So I went ahead and I paid for those protested orders for them. It ran along for two or three weeks and they ran out of funds again. They give me time orders. For the first ones they give me there was no per cent. on. The second time I agreed to carry them along until when their tax money came in, some time along in the forepart of January, around the holidays. I took care of all of the payrolls after that and also straightened up their orders. On some of the orders they allowed me 1 per cent., some 2½ per cent. Later on it got to be a bigger amount so they offered me 5 per cent. I went to work and borrowed money. I didn't have money of my own to carry them all the time. I borrowed money from different banks and paid interest on it."

Solar raised sufficient funds to meet defendant's obligations for labor and material to proceed with the construction until in December, when operations were suspended for the winter. About the first of January he met with the township board and submitted to it bills paid by him for the township, protested and unprotested township orders, etc., which were audited, allowed, and orders given him to cover the same.

Until work was suspended for the winter he was working for the construction company. The town-

ship then employed him during the winter, while construction was suspended, to care for the building, arrange and prepare for delivery of material, etc., at an agreed wage of $12 per day until resumption of work in the spring.    When work first started in the spring he took care of the payrolls, bills for material, freight, etc., for a time receiving from the board township orders therefor.    Some of those orders were paid and others renewed.    Some had been sold by him to raise money to pay labor and material bills.

After the building was completed four of those orders which he had sold and assigned to plaintiff Rubatt to raise money to meet defendant's bills were yet outstanding.    This action was brought to recover the amount of those orders, for which plaintiff testified he paid full value.    Copies are attached to and made a part of his declaration.    They are in regular form, signed by the township supervisor, clerk, and treasurer, and amount to $4,732.29. ` Two of them are dated May 3, 1922, one being for $1,025, the other for $1,206.96; the other two June 1, 1922, one being for $1,771.47, the other for $728.86.    All are made payable January 10, 1923, and all but the last-named bear interest at 7% per annum.    All bills for material, payrolls, etc., so taken care of for the township by Solar were reported to the Foster Construction Company exactly as though paid by defendant township and are shown in detail upon the cost summary of the construction company which was introduced in evidence.

The trial court held from the records produced before him supplemented by undisputed oral testimony that for each of the years 1920 and 1921 the electors of the township at meetings legally called and held authorized the levying of taxes upon property of the township to the amount of $51,000 for the purpose of building a town hall.

Defendant's underlying assignment of error is

directed against this ruling based upon the contention that the statutory essentials for such taxation are not shown to have been complied with.    It must be conceded that the manner in which this board kept or failed to properly keep and care for its official files and records in this important matter gives just ground for defendant's criticisms and a fair field for technical objections.

Under its claim of *ultra vires*, defendant states that Solar's agreement with the township board to temporarily help it out in time of shortage, and take township orders therefor, is rooted on its contract with the construction company for erection of a town hall, which was unauthorized, beyond the power of the township board and void, citing and quoting section 2049, 1 Comp. Laws 1915, which provides as follows:

"The inhabitants of each township may at any legal meeting, by a vote of the qualified electors thereof, grant and vote any sum of money, not exceeding one per cent., in any one year, upon the assessed valuation of the taxable real and personal estate of such townships, as appears by the last equalized and perfected tax-roll of the townships, for the purpose of erecting a town hall, or other building or buildings required for the public use of such inhabitants, in whole or in part, for township purposes:  *Provided,* That no such vote shall be taken, nor appropriation made at such legal meeting of any township, unless a notice of intention to move for such a vote and appropriation, signed by at least twelve freeholders of such township, shall have been posted up in five of the most public places in such township, at least ten days previous to the day of such meeting, which said notice shall specify the amount to be raised for such purpose:  *And provided, further,* That no moneys shall be raised by tax, until a majority of the qualified electors, voting at such meeting, shall by ballot, authorize the same."

Defendant contends those statutory requirements are not shown to have been complied with in either of the two years an appropriation was attempted.    It is

also urged as to the second year (1921), that even if proper action was taken by the electors in 1920 to raise $25,000 for construction of a town hall, under the one per cent. limit of the statute the township was without authority to raise the further sum of $26,000 for the same purpose in the succeeding year. We cannot so construe the limitation. The statute prescribes no limit on the ultimate cost of a town hall. This was not a bonding or borrowing proposition, but one to raise money by taxation for the erection of a town hall, limited to one per cent. *in any one year.* There is nothing elsewhere in the act qualifying or limiting that language. Its meaning is too plain to permit interpretation or construction otherwise.

A book produced by the then township clerk and identified by him as the "township general record" and purporting to be the "record of the proceedings of the township and the township board" was admitted in evidence by stipulation. Touching the special meeting of July 6, 1920, it contained firmly attached to page 26 of the book two typewritten sheets officially signed. Although carelessly or ignorantly named by the clerk a special meeting of the township board, those pages show substantial compliance with the statute in calling and holding the special election in question and the result. They are not detached loose sheets but are carefully and firmly as the sheet they were attached to made a part of the records in that book and under the proofs entitled to be so construed. They are dated July 6, 1920, contain an affidavit by the supervisor showing full compliance with all statutory prerequisites for holding such special township meeting, evidently copied from an approved form for that purpose. The record then swings into minutes of the special meeting involved here as follows:

"A vote by ballot was then taken upon the proposition of raising by tax upon the taxable property of

the township of Wakefield, Gogebic county, Michigan, in the year A. D. 1920, the sum of $25,000 for the purpose of erecting a town hall for the public use of the inhabitants of said township, in whole or in part, for township purposes.

"The vote on this proposition was as follows:

"For raising $25,000 for the erection of a town hall, Yes, 64.

"For raising $25,000 for the erection of a town hall, No, 11."

This is followed by minutes of action taken by the township board providing for levy and assessment of a $25,000 tax for erection of a town hall for the public use of inhabitants of said township, and spreading the amount upon the tax roll of said township for the year 1920. It also contains an abridged recital in harmony with the record of the township meeting which precedes it.

The vote for a special tax of $26,000 in 1921 was cast at the regular township meeting for that year of which the records are not complete, but in connection with that election we find a resolution of the township board reciting the regular voting of a special tax for that amount at such election, the levying and spreading of the tax in legal form and for temporarily borrowing money for the purpose specified until such tax could be collected. The court permitted, against objection, testimony by the then supervisor showing in detail that he posted the requisite notices for such meeting and proposed special tax, that he officiated at that township meeting and confirmed in detail the written record as to what then occurred, saying in part:

"I was present at the annual meeting of the township election held on the first Monday in April, 1921. Prior to that annual meeting I circulated another notice of voting additional township hall money. I posted the notice the requisite number of places, and a sufficient time before election as required by law. The question was brought up to be voted on on the first

Monday in April, 1921.    The people voted to raise $26,000 additional for town hall purposes."

Defendant's most serious objection is launched against the admission of this oral testimony to supplement the records.    It is to be noted that defendant is seeking to defeat a tax of which it presumptively had the benefit, and to take advantage of the delinquencies of its officers in not properly keeping its own records.    Plaintiff manifestly made every effort to produce the best evidence upon that subject obtainable, by subpœnas *duces tecum* and otherwise.    Though imperfect and poorly kept, the available files and records of this township furnish written evidence tending to show that the statutory essentials for assessment and levy of those taxes were observed.    Upon the question of oral evidence supplementing but not contradicting such written records, directed to showing facts omitted to be stated therein, it was early said in *Township of Taymouth* v. *Koehler*, 35 Mich. 22, 25, in part as follows:

"While, therefore, there should be proper written evidence on file or of record, showing that the requisite statutory preliminary requirements to a legal meeting had been complied with, and showing that such a meeting had been held, and the proceedings thereof, courts should bear in mind that, either from a lack of experience or otherwise, it frequently happens that the persons whose duty it is to give notice of and keep a record of such meetings, fail to keep the files and records of their office in a clear and intelligible manner, and that to require the utmost strictness in this respect would result in many cases in rendering void the proceedings of such *quasi* corporations; their proceedings, therefore, should be liberally construed and all proper intendments made in favor of their regularity.    *    *    *

"It has, however, frequently been held that while parol evidence could not be admitted to contradict the record, yet that it might be introduced to show facts omitted to be stated; that the rights of creditors or

third persons cannot be prejudiced by the neglect of the clerk to perform his duty in this respect." Citing numerous authorities, to which may be added later cases from both State and Federal courts.

In the recent case of *Kelsey* v. *Township of Burns*, 223 Mich. 173, involving the erection of a town hall, the defendant township was seeking to sustain the validity of the special tax therefor against the claim of a taxpayer who paid under protest that it was invalid. The court there held that the burden of establishing the invalidity of the tax rested at all times upon the plaintiff, who was seeking to defeat the tax, as defendant is here, and the presumption of its validity continued throughout the trial. While the special tax in that case was being assessed, levied, and collected the township records were destitute of any proof of posting notices for submitting the proposed special tax to the electors, as required by the statute. This was permitted against objection to be orally supplied by the testimony of a witness, who was township clerk when the tax was voted and testified to having posted the notices, and the tax was held valid. The court, speaking through Justice Fellows, there said:

"To hold the tax invalid upon the ground that no notice of the special election was given, basing such holding on the failure of the record to contain an affidavit of posting although such posting was actually done would be to reach a conclusion inhibited by the plain terms of the statute. The officers making township records are usually unskilled in the law and the records are liable to be imperfect and to contain irregularities which in no way interfere with or prejudice the rights of the taxpayer."

Under the facts shown here and the presumptions which obtain, we find no error in the instructions given by the court to the jury sustaining the validity of the levy and assessment of the special taxes for the two years in question. During that time $51,000 was voted by the electors, properly assessed and pre-

sumptively collected by defendant for the purpose claimed. This considerably exceeded the total cost of the town hall with all its improvements.

Defendant particularly assigns error against a portion of the charge in which the court somewhat equivocally submitted to the jury two theories under which recovery might be had if warranted by found facts. The first apparently based on the validity of the township orders being shown, and the second on the theory of *quantum meruit*, for actual value of material and services furnished, first instructing the jury as follows:

"Now, the township board of the township is the tribunal provided by law for the auditing of claims against the township. If Solar in good faith presented a bill to it, and it, the board, in good faith allowed the bill and an order was issued therefor, then the township is bound by that order, except as I shall hereafter state."

And later said, in part:

"If, however, there were no order issued, or if there was an order issued, but improperly, that would not defeat the right of the plaintiff. * * * So now you will naturally in the course of your deliberation ascertain whether or not the orders here relied upon are valid, under the instructions I have given you. If you find they are, that is all you need to do. If you find they are not, you may proceed to determine whether or not the plaintiff is entitled to recover on account of services, outlays, material, or labor furnished by Solar to the defendant and by the defendant accepted, used, and enjoyed."

We are persuaded the verdict rendered by the jury makes unimportant many of defendant's assignments of error. The jury evidently did not treat the township orders as conclusive, though apparently taking note of them and the items they included in reaching a verdict. They were in the aggregate for the sum of $4,732.29. The verdict was for $2,771.90. It

appears practically undisputed that the various amounts for material, services, etc., making up those orders were audited and allowed by the township board. Exhibit 10, introduced as Solar's account with the township from January 1, 1921, to June 1, 1922, when the last two of the four orders in question were given him, affords at least a plausible suggestion that the jury rejected the following items from the amount of the four orders: Discounts of the four orders as issued, $236.54; other items of discount appearing in Solar's account, $56,79, $10.33, $145.73, $200, and $135, making the total of discounts $784.39; also the item of wages during the winter when Solar was in defendant's employ for 98 days at $12 per day, $1,176, making the total of rejected items $1,960.39, which, deducted from the total sum of the four orders, meets the amount of the verdict. In any event, it is evident the jury did not accept the orders as conclusive and rendered their verdict on a *quantum meruit.*

It is true, as defendant's counsel states, that municipal warrants are not negotiable instruments which in the hands of an innocent holder cut off an available defense against the original payee; but they are assignable, subject to any defenses which could be made against the original holder. As assignee plaintiff is entitled to recover the reasonable value of whatever material, money, or expenditures his assignor, Solar, in good faith and at the instance of defendant's officers, furnished and defendant received, accepted, and retained the benefit of. We think this record fairly indicates that the jury gave plaintiff no more, and are not persuaded that any prejudicial error is shown which demands reversal.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.